John L. Boze (SBN 191846)
**LAW OFFICE OF JOHN L. BOZE**
A Professional Law Corporation
400 Capitol Mall, Suite 1850
Sacramento, California 95814
Telephone: (916) 822-8700
Facsimile: (916) 737-5658
john@bozelaw.net


William L. Porter (SBN 133968)
**PORTER LAW GROUP**
11335 Gold Express Drive, Suite 100
Gold River, California 95670
Telephone: (916) 381-7868
Facsimile: (916) 381-7880
bporter@porterlaw.com

Attorneys for Plaintiffs, ANTONIO POIPAO and
LINDA POIPAO

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO POIPAO and LINDA POIPAO, | CASE NO. |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' COMPLAINT FOR:** |
| COUNTY OF EL DORADO, | (1)    Fifth Amendment Taking; |
| Defendant. | (2)    Inverse Condemnation; |
| | (3)    Nuisance; |
| | (4)    Trespass; and |
| | (5)    Dangerous Condition to Public Property |

PLAINTIFFS, ANTONIO POIPAO and LINDA POIPAO (hereinafter referred as "PLAINTIFFS") allege as follows:

### DEMAND FOR JURY TRIAL

1.      PLAINTIFFS demand this action be tried by jury.

### JURISDICTION AND VENUE

2.      This is a civil suit brought by the PLAINTIFFS for a taking of property without just

1  compensation against EL DORADO COUNTY, a government entity for causing damage to

2  PLAINTIFFS' real property and taking such property without just compensation in violation of the

3  Fifth Amendment of the United States Constitution which provides that "private property [shall

4  not] be taken for public use without just compensation."   This Court has jurisdiction over the EL

5  DORADO COUNTY's damage to, and taking of PLAINTIFFS' real property without just

6  compensation under 42 U.S.C. § 1983 and the holding of the United States Supreme Court in Knick

7  v. Township of Scott, Pennsylvania 588 U.S. ____, 204 L. Ed. 2d 558, 139 S. Ct. 2162 (2019).  The

8  District Court has supplemental jurisdiction over the remaining causes of action alleged herein

9  under 28 U.S.C. § 1367.

**THE PARTIES**

11      3.      At all relevant times, PLAINTIFFS are the record owners of the real property

12  commonly described as 3450 Big Barn Road, Placerville, California ("Property").

13      4.      PLAINTIFFS are informed and believe, and on that basis alleges, that at all times

14  described herein, the COUNTY OF EL DORADO (hereinafter referred as "COUNTY") is the

15  owner and operator of the Placerville Airport located in the city of Placerville, El Dorado County,

16  California.

**GENERAL ALLEGATIONS**

18      5.      Based upon the PLAINTIFFS' information and belief, and at all material times

19  described herein, PLAINTIFFS allege as follows:

20      6.      The COUNTY owns and operates The Placerville Airport (hereinafter referred to as

21  the "Airport").  The Airport is located approximately three miles southeast of the city of Placerville

22  in the Sierra Nevada foothills.  The Airport is a general aviation airport classified by the Federal

23  Aviation Administration which designates the Airport with an Airport Reference Code BI airport

24  suitable for small aircraft.

25      7.      The Airport was originally constructed in 1929 and consisted of a single runway.  In

26  1966, a new runway was constructed on the top of the hill where it is currently located.  Since

27  1966, the COUNTY has made numerous improvements to the Airport, including without limitation,

28  adding and extending ramps and taxi ways, constructing hangars and a helipad, relocating fuel

1  tanks, reconstructing aircraft parking areas, building safety thresholds at both ends of the runway,

2  and repairing cracks in the taxiway.

3      8.      Under a grant from the Federal Aviation Administration, the COUNTY

4  commissioned an Airport Master Plan Update Study in 2007.  The Airport Master Plan Update

5  Study ("Study") was conducted by Reinard W. Brandley, Consulting Engineer.  The study made

6  numerous recommendations for improvements to the Airport.  One of the recommendations was to

7  increase the number of hangars which would increase the annual operations of the Airport and thus,

8  the revenue generated from hangar leases.  This increase in rental income would be a direct

9  financial benefit to the COUNTY.  Regarding constructing additional hangars, the Study

10  recommended the following on pages 4-5 to 4-6:

> D.      Aircraft Storage Hangars.  There are currently 101 hangar units on the
> airport with 135 airplanes occupying the hangars.  There is no room for additional
> hangars at the airport as currently configured.  There are more than 100 names on
> the wait list for new hangars, and there are several building developers in the
> Placerville area that are desirous of building groups of hangar units at the airport.
> There is one major FBO building and there are two other small FBOs at the
> airport.
>
> It is important that space be developed to accommodate additional hangars.
> It is considered important for the continued development of this airport that space
> be provided to accommodate at least 100 additional hangar units.  The airport is
> built on top of a ridge and there is very little room where hangar development
> could occur without placing major fills.  There is, however, one area at the east
>
> and north of the runway where there is a significant area between the runway and
> the property line that can be leveled and developed as a hangar development area.
> In this area there is a significant ridge that would need to be cut off, and the fill
> from the ridge could be used to fill in the low areas, particularly to the west of the
> ridge.  By grading this area the hangar development area could be constructed
> such that it is the same elevation as the taxiway and would provide easy access to
> the airport. Portions of this ridge are currently an obstruction for the operations of
> Runway 5-23.  By grading this ridge the obstruction will be removed and space
> will be provided for much needed additional hangars.

9.      After publishing the Study, the COUNTY performed the grading and other site work

on the northeast portion of the Airport in preparation for the anticipated construction of the

additional hangar units recommended in the Study.  As part of the grading work, the existing

drainage pond was filled in and an 18" inch diameter pipe was installed running from the northeast

section of the graded portion of the Airport to an area southeast of Runway 5-23 and emptying into makeshift earthen "Vee" ditches running along the ridgeline.  The earthen "Vee" ditches meant to collect the water from the pipe were inadequate to collect the volume of water and caused the water to flow directly on the PLAINTIFFS' Property below.  The water flow undermined the hillside on the PLAINTIFFS' property and was the substantial cause of a massive mudslide which occurred on December 31, 2022.

10.     The grading and site work, including filling in the drainage pond, diverted water previously collected in the drainage pond to flow over the ridge through the drainage pipe directly onto the PLAINTIFFS' Property.  This artificial and poorly designed diversion of water onto the PLAINTIFFS' property was intended to drain stormwater from the Airport without any regard for the effect on the PLAINTIFFS' Property.

11.     The grading and drainage work failed to comply with the COUNTY's Drainage Manual adopted March 14, 1995.   The Drainage Manual was drafted and adopted for the express purpose of the protection of life and property.  Section 1.2 of the 1995 Drainage Manual provides:

> "The provision of adequate drainage is necessary to preserve and promote the general health, welfare and economic well being of the public.  Drainage is a regional feature that affects all parcels of property.  The responsibility for stormwater management is shared by governmental jurisdictions and all property owners."

> "All habitable structures and other improvements subject to potential loss of life or property and when inundated by flood waters, shall be protected from damage pursuant to the requirements set forth in the El Dorado County Grading and Drainage Ordinance.  Drainage facilities shall be planned and designed to protect life and property pursuant to applicable provisions included in this document and the El Dorado County Design and Improvements Standards Manual and Unifor Building Code."

12.     Section 1.3 of the 1995 Drainage Manual expressly describes the intent to mitigate the disposal of stormwater runoff:

> "The planning and design of drainage systems within El Dorado County shall take into consideration any potential downstream impacts including those to property, flow regimes, water quality or riparian and wet land areas.  Provisions mitigating potential impacts shall be included as a part of the drainage analysis for the proposed project."

"Planning and design of drainage facilities shall not be based on the premise that drainage problems can be transferred from one location to another except when the transfer is part of a regional solution to flood problems. A proposed development shall not create increased runoff to downstream property through diversion of flows which had previously drained to another area without the implementation of adequate mitigation measures."

13.     Section 1.4 of the 1995 Drainage Manual expressly describes the need to mitigate the increased runoff:

"Increases in runoff from upstream properties resulting from improvements is discouraged in El Dorado County. Improvements which propose to increase stormwater runoff from upstream property shall be evaluated to determine if downstream conveyance facilities can accept and convey the runoff increase."

"If downstream facilities do not meet the criteria stated above, a detailed analysis shall be made to include impacts and mitigation to all downstream facilities to show that downstream existing facilities can adequately accept the increase flows."

"The detailed analysis must show that land downstream of properties is not lost due to increase flood plain limits, there is no increase in erosion, there is no net loss of storage available to attenuate peak flows, and the capacity of the downstream facilities are such that they can accommodate the increase flow from maximum development possible for the entire upstream catchment."

14.     PLAINTIFFS were unaware that the COUNTY had diverted the water onto their PROPERTY from the northeast to the southeast through the drainage pipe.

15.     The erosion to the PLAINTIFFS' downstream property substantially caused by the diversion of stormwater through the drainage pipe resulted in a landslide in the early morning hours of December 31, 2022. Tons of mud, rock, trees and other debris came lose and, along with the water from Airport drainage, swiftly flowed down the hillside directly into the PLAINTIFFS' residence causing extensive damage to the home. The debris crashed through to rear of the residence facing the hillside instantly tearing down walls, pulling down the roof trusses and structure, and flowing out through the front of the home as well as around the north side of the home across Big Horn Road and onto the neighbors' property. By sheer luck, PLAINTIFFS were not home at the time of the mudslide, otherwise there is great likelihood they would have been killed, as four feet of mud and debris crashed into the master bedroom at the rear of the home. The COUNTY has red-tagged the PLAINTIFFS' residence as unsafe to occupy.

16.     The COUNTY had knowledge that stormwater from the Airport drained on the downhill property owners.  Another downhill landowner informed the COUNTY's Planning and Development Department that stormwater was draining from the Airport facility and causing erosion on downhill properties, and that engineers from the U.S. Department of Agriculture's National Resource Conversation Service had informed the property owner of such.  Despite this knowledge, the COUNTY failed to take any remediation of the stormwater drainage issues.

17.     The damage to the PLAINTIFFS' Property was substantially caused by the inherent risk of the COUNTY grading and installing drainage to divert water which previously was collected in the retention pool directly onto the PLAINTIFFS' Property.  This diversion of water posed an inherent risk to the PLAINTIFFS' Property as the grading and drainage were deliberately. and inadequately designed, constructed and maintained.  This grading and drainage work was performed by the County for the specific purpose of doubling the number of hangars at the Airport to accommodate continued growth of the Airport and for the direct financial benefit of increasing the not only the hangar rental income but also the income from the services used by significantly more persons flying in and out of the Airport.   Since the COUNTY stood to gain from the additional income from the hangar leases and other commensurate services, the COUNTY should bear the responsibility for PLAINTIFFS' damages since such improvements benefit the Airport and the COUNTY at large.

18.     The COUNTY was or should have been aware that the "Vee" ditches were inadequate to hold the water discharged from the installed drainage pipe.

19.     PLAINTIFFS' damages to their Property was the probable result and/or necessary effect of an inherent risk associated with the design, construction, or maintenance of the COUNTY's grading and diversion of water from the Airport to PLAINTIFFS' Property.

**COMPLIANCE WITH CLAIMS STATUTE**

20.     PLAINTIFFS have complied fully with the Government Claims Act (commencing at Government Code § 810, *et seq.*) by presenting a government claim on or about January 13, 2023 to the COUNTY.  A true and correct copy of the PLAINTIFFS' government claim is attached hereto as Exhibit "A" and incorporated herein by reference.  On January 19, 2023, the COUNTY's

1  liability claims adjuster, George Hills, acknowledged in writing receipt of the PLAINTIFFS'

2  government claim.  A true and correct copy of the January 19, 2023 letter acknowledging receipt of

3  PLAINTIFFS' government claim is attached hereto as Exhibit "B" and incorporated herein by

4  reference.   On or about June 19, 2023, PLAINTIFFS filed an Amended Liability Claim Form with

5  the Clerk of the COUNTY, a copy of which is attached at Exhibit "C" and incorporated herein by

6  reference.

7      21.    At the time the PLAINTIFFS filed this Complaint, the COUNTY failed to respond

8  to the PLAINTIFFS' original government claim other than the acknowledging receipt of the claim

9  by the COUNTY's liability claims adjuster.  By refusing to provide any notice stating the

10 insufficiency of the PLAINTIFFS claim, the COUNTY has waived the defense of insufficiency of

11 the PLAINTIFFS' claim pursuant to Government Code § 911.  Additionally, the COUNTY has

12 failed to respond to the PLAINTIFFS' Amended Liability Claim Form filed on June 19, 2023.

### **FIRST CAUSE OF ACTION**

**VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITION;
42 U.S.C. § 1983**

    22.    PLAINTIFFS incorporate by reference each and every paragraph of the Complaint
as if fully set forth herein.

    23.    The COUNTY's acts and omissions to allow stormwater from the Airport to drain
on their Property causing almost total destruction of their real and personal property constitutes a
seizure of PLAINTIFFS' property without just compensation, all in violation of the Fifth
Amendment of the United States Constitution.

    24.    This claim is being made against the COUNTY pursuant to 42 U.S.C. § 1983 which
provides in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress,. . .".

    25.    The Fifth Amendment of the United States Constitution, made applicable to the

1   states via the Fourteenth Amendment, is a constitutional provision and right requiring the payment

2   of just compensation upon a taking of private property by Defendants. See Knick v. Township of

3   Scott, Pennsylvania 588 U.S. ____, 204 L. Ed. 2d 558, 139 S. Ct. 2162 (2019).

4        26.    After the Study was published, the COUNTY filled in the existing drainage pond on

5   the northeast corner of the Airport and graded it to prepare the site for the additional hangars.  As

6   part of the site work, it diverted the drainage away from the hangar pad to the southeast corner of

7   the Airport using a drainage pipe 18 inches in diameter causing the water to be intentionally and

8   artificially discharged onto the PLAINTIFFS' Property.  In performing the grading and drainage

9   diversion work, the COUNTY acted unreasonably and failed to adequately construct the drainage

10  so as not to substantially increase the drainage of stormwater onto the PLAINTIFFS' Property.

11       27.    The acts and omissions of the COUNTY constitute a physical invasion of

12  PLAINTIFFS' real property as a direct result of the public use of the Airport damaging

13  PLAINTIFFS' real and personal property, negatively impacted their use of their Property and

14  continues to pose and unreasonable and inherent danger of continuing damage to their Property,

15  and loss of use and a taking without just compensation, and constituting inverse condemnation.

16       28.    The COUNTY has taken PLAINTIFFS' Property for public use by intentionally

17  diverting and draining stormwater from Airport to PLAINTIFFS' Property without providing just

18  compensation.

19       29.    Defendants have provided no compensation to PLAINTIFFS for the taking of their

20  Property, thereby depriving PLAINTIFFS of their constitutional rights in violation of the Fifth

21  Amendment of the United States Constitution.

22       30.    As a substantial cause of the inherent risk of the COUNTY deliberately diverting the

23  Airport drainage from the northeast to the southeast onto PLAINTIFFS' property, PLAINTIFFS

24  have lost their home, most of their personal property located in the home, the value of their land,

25  the use of their property, relocation costs due to displacement and other damages without just

26  compensation in an amount in excess of $1,500,000 to be proven at trial.

27  / / /

28  / / /

**SECOND CAUSE OF ACTION**

**INVERSE CONDEMNATION**

(Against Defendant, COUNTY OF EL DORADO)

31.     PLAINTIFFS incorporate by reference each and every paragraph of the Complaint as if fully set forth herein.

32.     Article I, Section 19 of the California Constitution provides the basis for recovery against government entities under the legal cause of action for inverse condemnation when private property is taken or damaged for a public use without just compensation by the owner.

33.     The COUNTY owns and operates the Airport.  In 2007, the COUNTY commissioned a study which recommend that the northeast portion of the Airport be graded to expand the number leasable aircraft hangars by one hundred percent.  This expansion was a direct public benefit to the Airport and the COUNTY which would have received the income from both the hangar leases and the additional services provided to the increased number of aircraft.

34.     After the Study was published, the COUNTY filled in the existing drainage pond on the northeast corner of the Airport and graded it to prepare the site for the additional hangars.  As part of the site work, it diverted the drainage away from the hangar pad to the southeast corner of the Airport using a drainage pipe 18 inches in diameter causing the water to be intentionally and artificially discharged onto the PLAINTIFFS' Property.  In performing the grading and drainage diversion work, the COUNTY acted unreasonably and failed to adequately construct the drainage so as not to substantially increase the drainage of stormwater onto the PLAINTIFFS' Property.

35.     PLAINTIFFS were unaware that the COUNTY previously constructed improvements to the infrastructure at the Airport which diverted water onto their Property when they purchased the Property in January 2021.  Prior to the landslide on December 31, 2022, PLAINTIFFS did not alter the topography or drainage, and have acted reasonably with regard to their occupation and use of the existing improvements on the Property.

36.     The acts and omissions of the COUNTY constitute a physical invasion of PLAINTIFFS' real property as a direct result of the public use of the Airport damaging PLAINTIFFS' real and personal property, negatively impacted their use of their Property and

1    continues to pose and unreasonable and inherent danger of continuing damage to their Property,

2    and loss of use and a taking without just compensation, and constituting inverse condemnation.

3       37. As a substantial cause of the inherent risk of the COUNTY deliberately diverting the

4    Airport drainage from the northeast to the southeast onto PLAINTIFFS' property, PLAINTIFFS

5    have lost their home, most of their personal property located in the home, the value of their land,

6    the use of their property, relocation costs due to displacement and other damages to be proven at

7    trial in excess of $1,500,000.

8    **THIRD CAUSE OF ACTION**

9    **NUISANCE**

10   (Against Defendant, COUNTY OF EL DORADO)

11      38. Plaintiff incorporates by reference each and every paragraph of the Complaint as if

12   fully set forth herein.

13      39. In the course of owning, constructing, operating and maintaining the Airport, the

14   COUNTY directed and allowed stormwater to drain from the Airport onto the PLAINTIFFS'

15   Property and other downhill landowners which caused erosion and interfered with the quiet

16   enjoyment of PLAINTIFFS' Property in such a way as to substantially cause a landslide on

17   PLAINTIFFS' Property destroying their land and single family residence, their personal property

18   located in the residence and have displaced them from living in their residence, with conscious

19   knowledge and/or disregard for the substantial cause of diverting the stormwater runoff onto

20   PLAINTIFFS' Property as well as increasing the volume and velocity of the stormwater runoff

21   from the Airport on to PLAINTIFFS' Property.

22      40. The COUNTY's aforementioned ownership, construction, operation and

23   maintenance of the Airport and its stormwater drainage and runoff constitutes a nuisance within the

24   meaning of California Civil Code §3479 in that it was and continues to be injurious to the

25   PLAINTIFFS' Property and interfered with the PLAINTIFFS' comfortable use and enjoyment of

26   the Property.

27

28

41.     As a substantial result of the foregoing, PLAINTIFFS have sustained uncompensated damages in the amount exceeding $1,500,000, the exact amount of which will be proven at trial.

## FORTH CAUSE OF ACTION

### TRESPASS

(Against Defendant COUNTY OF EL DORADO)

42.     Plaintiff incorporates by reference each and every paragraph of the Complaint as if fully set forth herein.

43.     In the course of owning, constructing, operating and maintaining the Airport, the COUNTY directed and allowed stormwater to drain from the Airport onto the PLAINTIFFS' Property and other downhill landowners which caused erosion and interfered with the quiet enjoyment of PLAINTIFFS' Property in such a way as to substantially cause a landslide on PLAINTIFFS' Property destroying their land and single family residence, their personal property located in the residence and have displaced them from living in their residence, with conscious knowledge and/or disregard for the substantial cause of diverting the stormwater runoff onto PLAINTIFFS' Property as well as increasing the volume and velocity of the stormwater runoff from the Airport on to PLAINTIFFS' Property.

44.     Article 10, Section 7 of the California Constitution provides:

> "Whenever any agency of government, local state, or federal, hereinafter acquires any interest in real property in this State, the acceptance of the interest shall constitute an agreement by agency to conform to the laws of the California as the acquisition, control, use, and distribution of water with respect the land so acquired."

45.     California law provides that an upper owner who directs the surface waters is liable for damages suffered by the lower owner regardless of whether the upper owner's conduct was reasonable.  Based on the foregoing, the COUNTY artificially diverted the stormwater from the Airport to the PLAINTIFFS' Property causing trespass onto the PLAINTIFFS' Property.

46.     As a substantial result of the foregoing, PLAINTIFFS have sustained uncompensated damages in the amount exceeding $1,500,000, the exact amount of which will be

1  proven at trial.

## FIFTH CAUSE OF ACTION

### DANGEROUS CONDITION OF PUBLIC PROPERTY

(Against Defendant COUNTY OF EL DORADO)

47.     Plaintiff incorporates by reference each and every paragraph of the Complaint as if fully set forth herein.

48.     In the course of owning, constructing, operating and maintaining the Airport, the COUNTY directed and allowed stormwater to drain from the Airport onto the PLAINTIFFS' Property and other downhill landowners which caused erosion and interfered with the quiet enjoyment of PLAINTIFFS' Property in such a way as to substantially cause a landslide on PLAINTIFFS' Property destroying their land and single family residence, their personal property located in the residence and have displaced them from living in their residence, with conscious knowledge and/or disregard for the substantial cause of diverting the stormwater runoff onto PLAINTIFFS' Property as well as increasing the volume and velocity of the stormwater runoff from the Airport on to PLAINTIFFS' Property.

49.     At all times mentioned herein the drainage from the public Airport were and continue to be a dangerous condition because they have caused erosion, subsidence and damage to PLAINTIFFS' Property and present a risk of causing further erosion and subsidence to PLAINTIFFS' Property and to other downhill properties, and the COUNTY continues to permit this condition to continue.

50.     The COUNTY has created a continued dangerous condition.

51.     PLAINTIFFS are informed and believe and therefore allege that the COUNTY had actual or constructive knowledge notice of the dangerous condition for a long enough time to have protected against such condition, but the COUNTY failed and refused to take any corrective action.

52.     PLAINTIFFS have been damaged by the forgoing dangerous condition of public property as more fully alleged herein.

53.     As a substantial result of the foregoing, PLAINTIFFS have sustained uncompensated damages in the amount exceeding $1,500,000, the exact amount of which will be

proven at trial.

WHEREFORE, PLAINTIFFS pray for judgment against Defendant as follows:

1.  Consequential and compensatory damages in the sum of at least $1,500,000;

2.  Injunctive relief on PLAINTIFFS' nuisance cause of action;

3.  Injunctive relief to prevent further drainage of stormwater from the Airport on to PLAINTIFFS' Property;

4.  Exemplary damages according to proof;

5.  Reasonable attorney's fees, appraisal fees, expert fees, and related expenses, and costs;

6.  Prejudgment interest at the statutory rate; and

7.  For such other and further relief which the Court deems just and proper.

Dated: June 29, 2023.                                  **LAW OFFICE OF JOHN L. BOZE**

John L. Boze
Co-Counsel for Plaintiffs, ANTONIO and
LINDA POIPAO

# EXHIBIT "A"

Pg. #4

# LIABILITY CLAIM FORM

**RETURN SIGNED CLAIM FORM TO:**
Clerk of the Board
County of El Dorado
330 Fair Lane
Placerville, CA 95667



EDC BOS RCVD
JAN 13 2023 PM2:16

**DO NOT WRITE IN THIS SPACE**
(BOARD OF SUPERVISOR'S DATE STAMP)

| | |
|---|---|
| Name of Claimant: Tony & Linda Poipao | **Claimant's Mailing Address:** 3450 Big Barn Rd. Placerville, Ca 95667 |
| Email: | |
| Telephone (Home): 925-864-4344 | **Claimant's Physical Address:** (if different than mailing) |
| Telephone (Work/Cell): Linda cell #925 305-8604 | — SAME — |
| *Social Security Number: 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 | |
| *Claimant's Date of Birth: 3 3 50   *Gender: ☒ M ☐ F | |
| Driver's License Number: R0572533  CA. | |

*If any portion of your claim is for bodily injury, this information is required to comply with Federal Medicare Reporting Requirements. Settlement will be delayed or prevented without this information.

Where would you like notices sent? (Include name and address if Attorney, Insurance Company or Other)
☒ Claimant  3450 Big Barn Rd. Placerville, Ca. 95667
☒ Attorney  too soon — Interviewing many — Still in Discovery
☐ Insurance
☐ Other

When did Damage or Injury occur?              Before to have
TIME: happen 5:30 to 6:30  ☒ AM  ☐ PM
DATE: 1 31 22

Where did Damage or Injury occur?  South west slope of Airport
About 500 to 600 ft Behind our home west slope of Airport

How did Damage or Injury occur? (Give full details – use extra sheet if necessary)
What the 2 soils Engineers & Any Additional civil Engineers from CWE — in Roseville
who have walked Around & thru the Slide have so mistakenly determined is that
a Vditch coming from the Airport was directed At my property And exits quickly
over flowing An About A 40' wide street of water directly at the slope which
become over saturated & caused this mountain of mud, trees, stumps &
Flews of mud — Down hill into my house → We have video taken
What particular act or omission on the part of El Dorado County employees caused the Injury or Damage?
the Day of the Event showing Flews coming under & thru the Airport Fence.
X The omission of the Airport coming is: State law that says if you redirect water from
its natural Flew you Are responsible for Damage to property owner down hill.
The Airport property is required to maintain & comply with All water Quality control
Standards. It is very clear big All you Are not in compliance with the Law.

The County will report any payment made on this claim on an IRS form 1099-MISC. No payment will be made without the information furnished on attached Payee Data Record. Disposition of the claim will rely solely on its merits and the furnishing of any form or other information will not ensure payment.

Pg. #5

**What is the name of the El Dorado County employee who caused the Injury or Damage?**

No Employee "par say"

**What Damage or Injury do you claim resulted?**

My whole house may have to be rebuilt — Debri' cleanup
Landscaping redone; — All our Furniture, Mud & Debri' and
Big Barn Rd — Affected — Some 400 ft Long. — Pictures
of result will shock you. —

**Amount of this claim is:**

☐ Under $10,000          ☐ $10,000-$25,000          ☑ Over $25,000

If the amount you are claiming is under $10,000, state the amount of the claim, including the estimated amount of any prospective injury, damage, or loss, as it may be known at this time. (Explain your calculation and attach bills or documents.)

**Other Details?** We intend to have pictures & video's of Damage
& other expert matters on the matter & will continue with
more Discovery. — I am an (A) Licensed engineering Contractor; I can
& will show that the county has not maintained that drainge system
& was at Fault for what happened.

**Names and Addresses of Witnesses, Doctors and/or Hospitals:**

Middle of the Night — nobody saw it until day break — My wife
would have been Killed if we were home that Night.

**Claimant's Signature:**

Milano Barbao

**Date:** 1/13/23

**Take Notice:**

**Section 72 of the Penal Code provides:**

"Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable... as a felony."

* Persons responsible! How About (Preston Moore)
My Attorneys & I Are obtaining evidence from
Soils engineers & civil engineers showing horrendgs
Amounts of water comg from the outfall structure on
South east side of runway directed on my property
in line with my house. - The V Ditch from Airport
dumped 8,000 gal of water thru the Airport Fence
Saturating the slopes some 700' Above my house. we have
drone video of the whole seen. Some sheet some time
6 to 7 Hours After incident. — WE — my wife & I would
have died in am Bedroom had we been home

# EXHIBIT "B"



**GEORGE HILLS**
Our minds over your matters.

January 19, 2023

Tony & Linda Polpao
3450 Big Barn Road
Placerville, CA 95667-7964

RE:   Our Client:          County of El Dorado
      GHC Claim#:          GHC0050330
      Master Claim#:       23.00005
      Claimant:            Tony & Linda Polpao
      Date of Loss:        January 31, 2022

George Hills Company is the liability claims administrator for County of El Dorado.

This correspondence will serve as an acknowledgment of the Claim for Damages you filed with
the County of El Dorado. This is not an acceptance or admission of liability.

Please be advised we are investigating the circumstances surrounding the claim.  The claim
review process can take 45 days or more.  You will be advised in writing of the County of El
Dorado's decision after our investigation.

In the interim if you have any questions regarding the status of the claim please contact the
undersigned.

Sincerely,

George Hills Company, Inc.

Randy Rendig, President Emeritus
(916) 859-4811
Randy.Rendig@georgehills.com

cc:    County of El Dorado

P.O. Box 278 Rancho Cordova, CA 95741

# EXHIBIT "C"

# AMENDED
# LIABILITY CLAIM FORM

**RETURN SIGNED CLAIM FORM TO:**

Clerk of the Board
County of El Dorado
330 Fair Lane
Placerville, CA 95667



EDC BOS RCVD
JUN 16 2023 PM1:13

**DO NOT WRITE IN THIS SPACE**
(BOARD OF SUPERVISOR'S DATE STAMP)

| Name of Claimant: | Claimant's Mailing Address: |
|---|---|
| ANTONIO POPAO and LINDA POIPAO | 3450 Big Barn Road |
| Email: | Placerville, CA 95667 |
| Telephone (Home): | |
| Telephone (Work/Cell): (925) 864-4344 | Claimant's Physical Address: (if different than mailing) |
| *Social Security Number: | |
| *Claimant's Date of Birth:   *Gender: ☐ M ☐ F | |
| Driver's License Number: R0572533 | |

*If any portion of your claim is for bodily injury, this information is required to comply with Federal Medicare Reporting Requirements. Settlement will be delayed or prevented without this information.

Where would you like notices sent?  (Include name and address if Attorney, Insurance Company or Other)

☐ Claimant
☑ Attorney
☐ Insurance
☐ Other

William L. Porter
Porter Law Group
11335 Gold Express Drive, Suite 100
Gold River, CA 95670

**When did Damage or Injury occur?**

DATE: December 31, 2022          TIME: 05:00          ☒ AM     ☐ PM

**Where did Damage or Injury occur?**

SEE ATTACHED

**How did Damage or Injury occur? (Give full details – use extra sheet if necessary)**

SEE ATTACHED

**What particular act or omission on the part of El Dorado County employees caused the Injury or Damage?**

SEE ATTACHED

The County will report any payment made on this claim on an IRS form 1099-MISC. No payment will be made without the information furnished on the attached Payee Data Record. Disposition of the claim will rely solely on its merits and the furnishing of any form or other information will not ensure payment.

CLAIM NUMBER (For Clerk's Use Only)

CF (REV 03/15)          ~~ COMPLETE BOTH SIDES ~~

What is the name of the El Dorado County employee who caused the Injury or Damage?
SEE ATTACHED

What Damage or Injury do you claim resulted?
SEE ATTACHED

Amount of this claim is:

[ ] Under $10,000          [ ] $10,000-$25,000          [X] Over $25,000

If the amount you are claiming is under $10,000, state the amount of the claim, including the estimated amount of any prospective injury, damage, or loss, as it may be known at this time. (Explain your calculation and attach bills or documents.)

Other Details?

Claimants previously filed their Liability Claim Form on January 13, 2023 which assigned Claim No. 23.0005.

Names and Addresses of Witnesses, Doctors and/or Hospitals:

Claimant's Signature:                                          Date: 6/14/23

Take Notice:
Section 72 of the Penal Code provides:
    "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable... as a felony."

CF (REV 03/16)

1   John L. Boze (SBN 191846)
    **LAW OFFICE OF JOHN L. BOZE**
2   A Professional Law Corporation
3   400 Capitol Mall, Suite 1850
    Sacramento, California 95814
4   Telephone: (916) 822-8700
    Facsimile: (916) 737-5658
5   john@bozelaw.net

6

7   William L. Porter (SBN 133968)
    **PORTER LAW GROUP**
8   11335 Gold Express Drive, Suite 100
    Gold River, California 95670
9   Telephone: (916) 381-7868
    Facsimile: (916) 381-7880
10  bporter@porterlaw.com

11

12  Attorneys for Claimants, ANTONIO POIPAO and
    LINDA POIPAO

13

14

15  ANTONIO POIPAO and LINDA POIPAO,       CLAIM NO.  23.00005

16          CLAIMANTS,

17  vs.                                     ATTACHMENT TO AMENDED LIABILITY
                                            CLAIM FORM
18  COUNTY OF EL DORADO; and DOES 1
19  through 25, inclusive,

20          Defendants.

21

22

23      Claimants, ANTONIO POIPAO and LINDA POIPAO (hereinafter referred as

24  "CLAIMANTS") allege as follows:

                                **THE PARTIES**
25
26      1.      At all relevant times, CLAIMANTS are the record owners of the real property

27  commonly described as 3450 Big Barn Road, Placerville, California.

28      2.      CLAIMANTS are informed and believe, and on that basis alleges, that at all times

---

1 described herein, the COUNTY OF EL DORADO (hereinafter referred as "COUNTY") is the

2 owner and operator of the Placerville Airport located in the city of Placerville, El Dorado County,

3 California.

4     3.    The true names and capacities of Defendants sued herein as DOES 1-25, inclusive,

5 are unknown to CLAIMANTS, who therefore sue these Defendants by such fictitious names.

6 CLAIMANTS will amend this Amended Claim to allege their true names and capacities when

7 ascertained. CLAIMANTS are informed and believe and thereon allege that each of the fictitiously

8 named Defendants is responsible in some manner for the events and occurrences herein alleged,

9 and caused CLAIMANTS' damages as hereafter set forth.

10     4.    At all material times, each named Defendant, and DOE Defendant was the agent or

11 employee of each of the remaining Defendants, and in doing the things herein alleged, was acting

12 within the course and scope of such agency or employment and is jointly and severally liable for all

13 acts and omissions of the remaining Defendants.

14                 **GENERAL ALLEGATIONS**

15     5.    Based upon the CLAIMANTS' information and belief, and at all material times

16 described herein, CLAIMANTS allege as follows:

17     6.    The COUNTY owns and operates the Placerville Airport (hereinafter referred to as

18 the "Airport"). The Airport is located approximately three miles southeast of the city of Placerville

19 in the Sierra Nevada foothills. The Airport is a general aviation airport classified by the Federal

20 Aviation Administration which designates the Airport with an Airport Reference Code B1 airport

21 suitable for small aircraft.

22     7.    The Airport was originally constructed in 1929 and consisted of a single runway. In

23 1966, a new runway was constructed on the top of the hill where it is currently located. Since

24 1966, the COUNTY has made numerous improvements to the Airport, including without limitation,

25 adding and extending ramps and taxi ways, constructing hangars and a helipad, relocating fuel

26 tanks, reconstructing aircraft parking areas, building safety thresholds at both ends of the runway,

27 and repairing cracks in the taxiway.

28     8.    Under a grant from the Federal Aviation Administration, the COUNTY

1   commissioned an Airport Master Plan Update Study in 2007. The Airport Master Plan Update

2   Study ("Study") was conducted by Reinard W. Brandley, Consulting Engineer. The study made

3   numerous recommendations for improvements to the Airport. One of the recommendations was to

4   increase the number of hangars which would increase the annual operations of the Airport and thus,

5   the revenue generated from hangar leases. This increase in rental income would be a direct

6   financial benefit to the COUNTY. Regarding constructing additional hangars, the Study

7   recommended the following on pages 4-5 to 4-6:

8       D.    Aircraft Storage Hangars. There are currently 101 hangar units on the
airport with 135 airplanes occupying the hangars. There is no room for additional

9   hangars at the airport as currently configured. There are more than 100 names on
the wait list for new hangars, and there are several building developers in the

10   Placerville area that are desirous of building groups of hangar units at the airport.
There is one major FBO building and there are two other small FBOs at the

11   airport.

12   

13       It is important that space be developed to accommodate additional hangars.
It is considered important for the continued development of this airport that space

14   be provided to accommodate at least 100 additional hangar units. The airport is
built on top of a ridge and there is very little room where hangar development

15   could occur without placing major fills. There is, however, one area at the east
and north of the runway where there is a significant area between the runway and

16   the property line that can be leveled and developed as a hangar development area.
In this area there is a significant ridge that would need to be cut off, and the fill

17   from the ridge could be used to fill in the low areas, particularly to the west of the
ridge. By grading this area the hangar development area could be constructed

18   such that it is the same elevation as the taxiway and would provide easy access to
the airport. Portions of this ridge are currently an obstruction for the operations of

19   Runway 5-23. By grading this ridge the obstruction will be removed and space
will be provided for much needed additional hangars.

20   

21       9.    After publishing the Study, the COUNTY performed the grading and other site work

22   on the northeast portion of the Airport in preparation for the anticipated construction of the

23   additional hangar units recommended in the Study. As part of the grading work, the existing

24   drainage pond was filled in and a 18" inch diameter pipe was installed running from the northeast

25   section of the graded portion of the Airport to an area southeast of Runway 5-23 and emptying into

26   makeshift earthen "Vee" ditches running along the ridgeline. The earthen "Vee" ditches meant to

27   collect the water from the pipe were inadequate to collect the volume of water and caused the water

28   to flow directly on the CLAIMANTS' property below. The water flow undermined the hillside on

1   the CLAIMANTS' property and was the substantial cause of a massive mudslide which occurred

2   on December 31, 2022.

3       10.     The grading and site work, including filling in the drainage pond, diverted water

4   previously collected in the drainage pond to flow over the ridge through the drainage pipe directly

5   onto the CLAIMANTS' Property. This artificial and poorly designed diversion of water onto the

6   CLAIMANTS' property was intended to drain stormwater from the Airport without any regard for

7   the effect on the CLAIMANTS' Property.

8       11.     The grading and drainage work failed to comply with the COUNTY's Drainage

9   Manual adopted March 14, 1995. The Drainage Manual was drafted and adopted for the express

10  purpose of the protection of life and property. Section 1.2 of the 1995 Drainage Manual provides:

11      "The provision of adequate drainage is necessary to preserve and promote the
        general health, welfare and economic well being of the public. Drainage is a
12      regional feature that affects all parcels of property. The responsibility for
        stormwater management is shared by governmental jurisdictions and all property
13      owners."

14      "All habitable structures and other improvements subject to potential loss of life or
15      property and when inundated by flood waters, shall be protected from damage
        pursuant to the requirements set forth in the El Dorado County Grading and
16      Drainage Ordinance. Drainage facilities shall be planned and designed to protect life
        and property pursuant to applicable provisions included in this document and the El
17      Dorado County Design and Improvements Standards Manual and Unifor Building
18      Code."

19      12.     Section 1.3 of the 1995 Drainage Manual expressly describes the intent to mitigate

20  the disposal of stormwater runoff:

21      "The planning and design of drainage systems within El Dorado County shall take
        into consideration any potential downstream impacts including those to property,
22      flow regimes, water quality or riparian and wet land areas. Provisions mitigating
        potential impacts shall be included as a part of the drainage analysis for the proposed
23      project."

24      "Planning and design of drainage facilities shall not be based on the premise that
25      drainage problems can be transferred from one location to another except when the
        transfer is part of a regional solution to flood problems. A proposed development
26      shall not create increased runoff to downstream property through diversion of flows
        which had previously drained to another area without the implementation of adequate
27      mitigation measures."

28

Attachment to Amended Liability Claim Form                                          4

13.     Section 1.4 of the 1995 Drainage Manual expressly describes the need to mitigate the increased runoff:

"Increases in runoff from upstream properties resulting from improvements is discouraged in El Dorado County. Improvements which propose to increase stormwater runoff from upstream property shall be evaluated to determine if downstream conveyance facilities can accept and convey the runoff increase."

"If downstream facilities do not meet the criteria stated above, a detailed analysis shall be made to include impacts and mitigation to all downstream facilities to show that downstream existing facilities can adequately accept the increase flows."

"The detailed analysis must show that land downstream of properties is not lost due to increase flood plain limits, there is no increase in erosion, there is no net loss of storage available to attenuate peak flows, and the capacity of the downstream facilities are such that they can accommodate the increase flow from maximum development possible for the entire upstream catchment."

14.     CLAIMANTS were unaware that the COUNTY had diverted the water onto their PROPERTY from the northeast to the southeast through the drainage pipe.

15.     The erosion to the CLAIMANTS' downstream property substantially caused by the diversion of stormwater through the drainage pipe resulted in a landslide in the early morning hours of December 31, 2022. Tons of mud, rock, trees and other debris came lose and, along with the water from Airport drainage, swiftly flowed down the hillside directly into the CLAIMANTS' residence causing extensive damage to the home. The debris crashed through to rear of the residence facing the hillside instantly tearing down walls, pulling down the roof trusses and structure, and flowing out through the front of the home as well as around the north side of the home across Big Horn Road and onto the neighbors' property. By sheer luck, CLAIMANTS were not home at the time of the mudslide, otherwise there is great likelihood they would have been killed, as four feet of mud and debris crashed into the master bedroom at the rear of the home. The COUNTY has red-tagged the CLAIMANTS' residence as unsafe to occupy.

16.     The COUNTY had knowledge that stormwater from the Airport drained on the downhill property owners. Another downhill landowner informed the COUNTY's Planning and Development Department that stormwater was draining from the Airport facility and causing erosion on downhill properties, and that engineers from the U.S. Department of Agriculture's

1  National Resource Conversation Service had informed the property owner of such.  Despite this
2  knowledge, the COUNTY failed to take any remediation of the stormwater drainage issues.
3       17.     The damage to the CLAIMANTS' Property was substantially caused by the inherent
4  risk of the COUNTY grading and installing drainage to divert water which previously was
5  collected in the retention pool directly onto the CLAIMANTS' Property.  This diversion of water
6  posed an inherent risk to the CLAIMANTS' Property as the grading and drainage were deliberately
7  and inadequately designed, constructed and maintained.  This grading and drainage work was
8  performed by the County for the specific purpose of doubling the number of hangars at the Airport
9  to accommodate continued growth of the Airport and for the direct financial benefit of increasing
10  the not only the hangar rental income but also the income from the services used by significantly
11  more persons flying in and out of the Airport.   Since the COUNTY stood to gain from the
12  additional income from the hangar leases and other commensurate services, the COUNTY should
13  bear the responsibility for CLAIMANTS' damages since such improvements benefit the Airport
14  and the COUNTY at large.
15       18.     The COUNTY was or should have been aware that the "Vee" ditches were
16  inadequate to hold the water discharged from the installed drainage pipe.
17       19.     CLAIMANTS's damages to their Property was the probable result and/or necessary
18  effect of an inherent risk associated with the design, construction, or maintenance of the
19  COUNTY's grading and diversion of water from the Airport to CLAIMANTS' Property.
20                       **COMPLIANCE WITH CLAIMS STATUTE**
21       20.     CLAIMANTS have complied fully with the Government Claims Act (commencing
22  at Government Code § 810, *et seq.*) by presenting a government claim on or about January 13, 2023
23  to the COUNTY.  A true and correct copy of the CLAIMANTS' government claim is attached
24  hereto as Exhibit "A" and incorporated herein by reference.  On January 19, 2023, the COUNTY's
25  liability claims adjuster, George Hills, acknowledged in writing receipt of the CLAIMANTS'
26  government claim.  A true and correct copy of the January 19, 2023 letter acknowledging receipt of
27  CLAIMANTS' government claim is attached hereto as Exhibit "B" and incorporated herein by
28  reference.

Attachment to Amended Liability Claim Form                                    6

21.    At the time the CLAIMANTS filed this Complaint, the COUNTY failed to respond to the CLAIMANTS' government claims other than the acknowledging receipt of the claim by the COUNTY's liability claims adjuster.  By refusing to provide any notice stating the insufficiency of the CLAIMANTS claim, the COUNTY has waived the defense of insufficiency of the CLAIMANTS' claim pursuant to Government Code § 911.

**FIRST CAUSE OF ACTION**

**INVERSE CONDEMNATION**

(Against Defendant, COUNTY OF EL DORADO)

22.    CLAIMANTS incorporate by reference each and every paragraph of the Complaint as if fully set forth herein.

23.    Article I, Section 19 of the California Constitution provides the basis for recovery against government entities under the legal cause of action for inverse condemnation when private property is taken or damaged for a public use without just compensation by the owner.

24.    The COUNTY owns and operates the Airport.  In 2007, the COUNTY commissioned a study which recommend that the northeast portion of the Airport be graded to expand the number leasable aircraft hangars by one hundred percent.  This expansion was a direct public benefit to the Airport and the COUNTY which would have received the income from both the hangar leases and the additional services provided to the increased number of aircraft.

25.    After the Study was published, the COUNTY filled in the existing drainage pond on the northeast corner of the Airport and graded it to prepare the site for the additional hangars.  As part of the site work, it diverted the drainage away from the hangar pad to the southeast corner of the Airport using a drainage pipe 18 inches in diameter causing the water to be intentionally and artificially discharged onto the CLAIMANTS' Property.  In performing the grading and drainage diversion work, the COUNTY acted unreasonably and failed to adequately construct the drainage so as not to substantially increase the drainage of stormwater onto the CLAIMANTS' Property.

26.    CLAIMANTS were unaware that the COUNTY previously constructed improvements to the infrastructure at the Airport which diverted water onto their Property when they purchased the Property in January 2021.  Prior to the landslide on December 31, 2022,

1  CLAIMANTS did not alter the topography or drainage, and have acted reasonably with regard to

2  their occupation and use of the existing improvements on the Property.

3       27.    The acts and omissions of the COUNTY constitute a physical invasion of

4  CLAIMANTS' real property as a direct result of the public use of the Airport damaging

5  CLAIMANTS' real and personal property, negatively impacted their use of their Property and

6  continues to pose and unreasonable and inherent danger of continuing damage to their Property,

7  and loss of use and a taking without just compensation, and constituting inverse condemnation.

8       28.    As a substantial cause of the inherent risk of the COUNTY deliberately diverting the

9  Airport drainage from the northeast to the southeast onto CLAIMANTS' property, CLAIMANTS

10 have lost their home, most of their personal property located in the home, the value of their land,

11 the use of their property, relocation costs due to displacement and other damages to be proven at

12 trial in excess of $1,500,000.

13                          **SECOND CAUSE OF ACTION**

14                               NUISANCE

15                   (Against Defendant, COUNTY OF EL DORADO)

16      29.    Plaintiff incorporates by reference each and every paragraph of the Complaint as if

17 fully set forth herein.

18      30.    In the course of owning, constructing, operating and maintaining the Airport, the

19 COUNTY directed and allowed stormwater to drain from the Airport onto the CLAIMANTS'

20 Property and other downhill landowners which caused erosion and interfered with the quiet

21 enjoyment of CLAIMANTS' Property in such a way as to substantially cause a landslide on

22 CLAIMANTS' Property destroying their land and single family residence, their personal property

23 located in the residence and have displaced them from living in their residence, with conscious

24 knowledge and/or disregard for the substantial cause of diverting the stormwater runoff onto

25 CLAIMANTS' Property as well as increasing the volume and velocity of the stormwater runoff

26 from the Airport on to CLAIMANTS' Property.

27      31.    The COUNTY's aforementioned ownership, construction, operation and

28 maintenance of the Airport and its stormwater drainage and runoff constitutes a nuisance within the

1  meaning of California Civil Code §3479 in that it was and continues to be injurious to the

2  CLAIMANTS' Property and interfered with the CLAIMANTS' comfortable use and enjoyment of

3  the Property.

4        32.    As a substantial result of the foregoing, CLAIMANTS have sustained

5  uncompensated damages in the amount exceeding $1,500,000, the exact amount of which will be

6  proven at trial.

7  **THIRD CAUSE OF ACTION**

8  **TRESPASS**

9  (Against Defendant COUNTY OF EL DORADO)

10        33.    Plaintiff incorporates by reference each and every paragraph of the Complaint as if

11  fully set forth herein.

12        34.    In the course of owning, constructing, operating and maintaining the Airport, the

13  COUNTY directed and allowed stormwater to drain from the Airport onto the CLAIMANTS'

14  Property and other downhill landowners which caused erosion and interfered with the quiet

15  enjoyment of CLAIMANTS' Property in such a way as to substantially cause a landslide on

16  CLAIMANTS' Property destroying their land and single family residence, their personal property

17  located in the residence and have displaced them from living in their residence, with conscious

18  knowledge and/or disregard for the substantial cause of diverting the stormwater runoff onto

19  CLAIMANTS' Property as well as increasing the volume and velocity of the stormwater runoff

20  from the Airport on to CLAIMANTS' Property.

21        35.    Article 10, Section 7 of the California Constitution provides:

22        "Whenever any agency of government, local state, or federal, hereinafter
   acquires any interest in real property in this State, the acceptance of the interest

23        shall constitute an agreement by agency to conform to the laws of the California
   as the acquisition, control, use, and distribution of water with respect the land so

24        acquired."

25        36.    California law provides that an upper owner who directs the surface waters is liable

26  for damages suffered by the lower owner regardless of whether the upper owner's conduct was

27  reasonable. Based on the foregoing, the COUNTY artificially diverted the stormwater from the

28

1   Airport to the CLAIMANTS' Property causing trespass onto the CLAIMANTS' Property.

2       37.    As a substantial result of the foregoing, CLAIMANTS have sustained

3   uncompensated damages in the amount exceeding $1,500,000, the exact amount of which will be

4   proven at trial.

5   **FOURTH CAUSE OF ACTION**

6   **DANGEROUS CONDITION OF PUBLIC PROPERTY**

7   (Against Defendant COUNTY OF EL DORADO)

8       38.    Plaintiff incorporates by reference each and every paragraph of the Complaint as if

9   fully set forth herein.

10       39.    In the course of owning, constructing, operating and maintaining the Airport, the

11   COUNTY directed and allowed stormwater to drain from the Airport onto the CLAIMANTS'

12   Property and other downhill landowners which caused erosion and interfered with the quiet

13   enjoyment of CLAIMANTS' Property in such a way as to substantially cause a landslide on

14   CLAIMANTS' Property destroying their land and single family residence, their personal property

15   located in the residence and have displaced them from living in their residence, with conscious

16   knowledge and/or disregard for the substantial cause of diverting the stormwater runoff onto

17   CLAIMANTS' Property as well as increasing the volume and velocity of the stormwater runoff

18   from the Airport on to CLAIMANTS' Property.

19       40.    At all times mentioned herein the drainage from the public Airport were and

20   continue to be a dangerous condition because they have caused erosion, subsidence and damage to

21   CLAIMANTS' Property and present a risk of causing further erosion and subsidence to

22   CLAIMANTS' Property and to other downhill properties, and the COUNTY continues to permit

23   this condition to continue.

24       41.    The COUNTY has created a continued dangerous condition.

25       42.    CLAIMANTS are informed and believe and therefore allege that the COUNTY had

26   actual or constructive knowledge notice of the dangerous condition for a long enough time to have

27   protected against such condition, but the COUNTY failed and refused to take any corrective action.

28       43.    CLAIMANTS have been damaged by the forgoing dangerous condition of public

Attachment to Amended Liability Claim Form             10

1   property as more fully alleged herein.

2       44.    As a substantial result of the foregoing, CLAIMANTS have sustained

3   uncompensated damages in the amount exceeding $1,500,000, the exact amount of which will be

4   proven at trial.

5       Pursuant to California Code of Civil Procedure §1035, CLAIMANTS are entitled to recover

6   their reasonable attorney's fees, appraisal fees, expert fees, and related expenses, and costs as well

7   as prejudgment interest at the statutory rate.

8   Dated: June 16, 2023.             **PORTER LAW GROUP**

9

10

11                    William L. Porter

12                    Co-Counsel for CLAIMANTS, ANTONIO
and LINDA POIPAO

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment to Amended Liability Claim Form               11